FILED
U.S. IN CLERK'S OFFICE
DISTRICT COURT E.D.N.Y.
★ JUL 25 2012 ★
BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LORRAINE PADRO,

                Plaintiff,                            **MEMORANDUM & ORDER**

     -against-                                       10-CV-3387 (NGG)

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Lorraine Padro brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Social Security Administration's ("SSA") decision that she was not disabled and therefore not entitled to supplemental security income ("SSI"). She asserts that the Administrative Law Judge ("ALJ") failed to properly evaluate the opinion of her treating physician and her own subjective accounts of her pain and symptoms. The Commissioner of the SSA concedes that the ALJ improperly evaluated the opinion of Padro's treating physician and requests an order remanding Padro's claim for SSI for further administrative proceedings. Padro moves for judgment on the pleadings, seeking remand solely for calculation of benefits. She also moves for reconsideration of this court's denial of her motions for (1) leave to amend her Complaint to include claims of bias against the ALJ; and (2) a stay of the proceedings pending the resolution of a separate class action. For the reasons set forth below, the Commissioner's request for remand is GRANTED and Padro's motions are both DENIED.

**I.    BACKGROUND**

Padro filed an application for disability insurance benefits ("DIB") and SSI on August 6, 2007, alleging disability beginning on August 15, 1994. (Administrative Record (Docket Entry

1

# 26) ("Rec.") at 212.) She claimed an inability to work due to "diabetes, back problems, emotional problems, asthma, high cholesterol, and other drug problems." (Id. at 241.) This application was denied, and Padro requested a hearing before an ALJ. (Id. at 142, 144.)

ALJ Marilyn Hoppenfeld held a hearing on Padro's application on July 24, 2009. (Id. at 24.) She issued a decision on January 19, 2010, concluding that Padro was not disabled and therefore not entitled to DIB or SSI. (Id. at 6-21.) Padro requested review of the ALJ's decision from the SSA's Appeals Council; the Appeals Council denied this request on May 28, 2010 (id. at 1), rendering the ALJ's decision the final decision of the SSA. See 42 U.S.C. § 405(g).

On February 11, 2010, Padro again filed for SSI. (See Sicilia Ltr. of Dec. 8, 2011 (Docket Entry # 35) at 1.) On September 13, 2011, the SSA approved Padro's application, and she began receiving benefits backdated to February 11, 2010. (Id.)

Padro brought the instant Complaint in this court on July 23, 2010, alleging that the ALJ's decision on her first application for SSI—pertaining to the period from August 6, 2007, to February 10, 2010—was not supported by substantial evidence and was based upon errors of law. (Compl. (Docket Entry # 1) ¶ 11.) Padro requested a remand of her claim for SSI solely for calculation of benefits, or, in the alternative, for a new hearing before a different ALJ. (Id. at 3.) The Commissioner filed an Answer. (Docket Entry # 8.)

On April 20, 2011, Padro moved for (1) leave to amend her Complaint to include claims of bias and denial of a full and fair hearing by the ALJ; and (2) a stay of the proceedings in light of a separate class action in which Padro had joined. (Sicilia Ltr. of Apr. 20, 2011 (Docket Entry # 18) at 1-2.) The court denied the motion, finding that there was evidence of dilatory motive on Padro's part, that her proposed amendment would cause the Commissioner undue prejudice, and

that there was no basis for a stay of the proceedings. (Order of Apr. 27, 2011 (Docket Entry # 19) at 2.)

On April 28, 2011, the Commissioner filed a motion to remand Padro's application for SSI for further proceedings.[1] (Def. Mot. (Docket Entry # 20); Def. Mem. (Docket Entry # 21); Def. Reply (Docket Entry # 24).) That same day, Padro moved for judgment on the pleadings and requested a remand of her application for SSI solely for calculation of benefits; she did not challenge the denial of her application for DIB. (Pl. Mot. (Docket Entry # 22); Pl. Mem. (Docket Entry # 23); Pl. Reply (Docket Entry # 25).) On May 6, 2011, Padro moved for reconsideration of the denial of her motion to amend and for a stay of the proceedings. (Pl. Recons. Mot. (Docket Entry # 29); Pl. Recons. Mem. (Docket Entry # 30).)

## II. DISCUSSION

### A. Padro's Motion for Reconsideration of the Denial of Her Motion for Leave to Amend the Complaint and for a Stay of the Proceedings

Padro moves for reconsideration of this court's denial of her motion for leave to amend her Complaint and for a stay of the proceedings. This motion is denied.

The standard for granting a motion for reconsideration is "strict." Schrader v. CSX Transp, Inc., 70 F.3d 255, 257 (2d Cir. 1995). It may be granted (1) if the court overlooks critical facts; (2) if it overlooks controlling decisions that could have changed its decision, see id.; (3) to correct clear error; (4) to prevent manifest injustice; or (5) in light of new evidence, Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (citing Virgin Atl. Airways v.

---

[1] The Commissioner styles his motion as a "Motion for Partial Judgment on the Pleadings and Remand In Part for Further Administrative Proceedings." (Def. Mot. (Docket Entry # 20).) He moves this court for, inter alia, an order "affirming the portion of the Commissioner's final decision denying plaintiff's application for disability insurance benefits" and "remanding plaintiff's SSI claim for further administrative proceedings." (Id.) Padro does not, however, challenge the ALJ's denial of her application for DIB. (See Pl. Mem. (Docket Entry # 23) at 1 n.1; Compl.) Thus, to the extent that the Commissioner requests judgment on the pleadings with respect to Padro's DIB claim, that request is denied as moot. What remains is the Commissioner's request for a remand of Padro's SSI claim for further proceedings.

3

Nat'l Mediation Bd., 965 F.2d 1245, 1255 (2d. Cir. 1992)). The decision of whether to grant or deny a motion for reconsideration is committed to the court's discretion. Devlin v. Transp. Commc'ns Int'l Union, 175 F.3d 121, 131-32 (2d Cir. 1999).

Padro argues that amending her Complaint would (1) serve the interest of justice, (2) not cause undue delay, (3) not unduly prejudice the Commissioner, and (4) not be futile; and that a stay of proceedings would serve judicial economy. (Pl. Recons. Mem. at 1, 5.) These arguments, however, reference the standards for amendment and for stay of proceedings, not the strict standards for reconsideration set forth above. Padro provides no facts or law that would satisfy those standards. Her motion is therefore denied.

### B. Review of the ALJ's Decision

Padro argues that the ALJ's denial of her first application for SSI was based on an improper evaluation of her treating physician's opinion and of Padro's credibility. (See Pl. Mem. at 17-19, 23-24.) She requests that her case be remanded for calculation of benefits, or, in the alternative, for a de novo hearing before a different ALJ. (Compl. at 3.) The Commissioner concedes that the ALJ did not properly evaluate the opinion of Padro's treating physician but argues that the court should remand the case for further proceedings rather than for calculation of benefits. (See Def. Mem. at 20-25.) For the reasons that follow, the court concludes that the ALJ erred and remands Padro's application for SSI to the same ALJ for proper evaluation of Padro's treating physician's opinions and a new evaluation of Padro's credibility.

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor

4

Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) its findings are supported by

evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If

the residual functional capacity is consistent with prior employment, benefits are denied.

If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The parties do not dispute the ALJ's findings at steps one through three. At step one, the ALJ found that Padro was not engaged in substantial gainful activity. (Rec. at 11.) At step two, the ALJ found that Padro had the "following impairments: history of substance abuse disorder, depressive disorder, diabetes, alleged asthma, an alleged back disorder, and a claim of a recent[ly] fractured foot." (Id.) The ALJ found that Padro's back pain, right knee pain, and asthma were not severe.[2] (Id. at 12.) At step three, the ALJ found that Padro did not have an impairment or combination of impairments that met the SSA's listing of impairments. (Id.)

At step four, the ALJ determined that Padro had the residual functional capacity ("RFC") to perform light work.[3] (Id. at 13.) She found that Padro was able to sit, stand, and walk for six hours in an eight hour day and lift twenty pounds," but was "limited to work that is simple [and] routine, with limited decision making, known as low stress work." (Id. (citations omitted).) Based on this RFC and the opinion of a vocational expert, the ALJ found at step four that Padro

---

[2] The ALJ did not clearly indicate which (if any) of Padro's impairments were severe, but the court assumes that by listing those impairments that were *not* severe, the ALJ was implying that the other impairments she had previously listed in her step two analysis were severe. In any event, the ALJ's step two analysis is not in dispute here.

[3] The Second Circuit has described "light work" as follows:

The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time. A person who is deemed able to perform light work is also capable of doing sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009).

could not perform her past relevant work, but determined at step five that there were a significant number of jobs existing in the national economy that Padro could perform. (Id. at 18-19.) Padro does not dispute the ALJ's step four determination that she could not perform her past relevant work, but argues that the ALJ incorrectly determined her RFC by failing to properly evaluate the opinion of her treating physician and her credibility, and argues that this incorrect RFC determination infected the ALJ's finding at step five. (See Pl. Mem. at 17-20, 23-24.)

1. Evaluation of Treating Physician's Opinion

Both parties argue that the ALJ failed to give proper weight to the opinion of Dr. Yvonne Kury, Padro's treating physician.[4] (Pl. Mem. at 17-19; Def. Mem. at 20-21.) The court agrees.

A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual."[5] Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotation marks omitted). Under the SSA's regulations, "a treating physician's report is generally given more weight than other reports." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). The SSA's "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, "[w]hen other substantial evidence in the record"—such as other medical opinions—"conflicts with the treating

---

[4] Although the Commissioner concedes that the ALJ erred, the court will review the ALJ's analysis of Dr. Kury's opinion to determine whether Padro is entitled to a remand. See e.g., Pokorny v. Astrue, No. 09-CV-1694 (NGG) (JO), 2010 U.S. Dist. LEXIS 132033, at *14 (E.D.N.Y. Dec. 14, 2010); Maline v. Astrue, No. 08-CV-1712 (NGG), 2010 U.S. Dist. LEXIS 112389, at *5 (E.D.N.Y. Oct. 21, 2010); Glover v. Astrue, No. 06-CV-4586 (SCR) (LMS), 2010 U.S. Dist. LEXIS 142073, at *26-27 (S.D.N.Y. July 29, 2010).

[5] It is undisputed that Dr. Kury qualifies as a "treating physician" under this definition.

8

physician's opinion, [ ] that opinion will not be deemed controlling." Snell, 177 F.3d at 133. And in any case, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner" and are therefore never given controlling weight. Id. (internal quotation marks omitted).

Even when an ALJ does not give *controlling* weight to a treating physician's opinion, the ALJ must assess several factors to determine how *much* weight to give the assessment. See 20 C.F.R. § 404.1527(c)(2). Specifically, the ALJ must assess "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2)-(6). While an ALJ need not mechanically recite each of these factors, the ALJ must "appl[y] the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The court will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" or when the court "encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 32.

Here, the ALJ determined that Dr. Kury's assertions were not consistent with the medical evidence.[6] (Id. at 18.) The ALJ wrote:

> As for the opinion evidence, it is noted that [Dr. Kury], the claimant's psychiatrist, completed a psychiatric evaluation form in April 2009 concluding that the severity of the claimant's affective disorder results in marked restriction of activities of daily living and marked difficulties in maintaining concentration, persistence or pace, fulfilling the B criteria of Section 12.04 of the listings. However, Dr. Ku[ry]'s assertions are not consistent with the medical evidence, including the letters [s]he endorsed above, and are not supported by a treatment record. Those letters noted that the claimant was impaired by her psychiatric condition, but did not claim she was unable to work in any capacity.

---

[6] The court need not discuss Dr. Kury's findings in detail, as it is apparent on the face of the ALJ's decision that she failed to properly apply the treating physician rule.

9

> Further, consulting psychologist [Dr. Christina] O'Flaherty concluded that the claimant could perform simple work in a low stress environment with low public contact.

(Id. (citations omitted).)

The ALJ did not assess the factors required for assigning the proper weight to be given to Dr. Kury's opinion. See Schaal, 134 F.3d at 503; 20 C.F.R. § 404.1527(c)(2)-(6). Instead, the ALJ based her decision on: (1) the supposed inconsistencies between Dr. Kury's final opinion and her previous letters; and (2) the opinion of Dr. O'Flaherty, a consulting physician. Neither of these grounds is sufficient.

First, "[i]n circumstances where an ALJ finds an inconsistency in the opinions of a treating physician . . . , the ALJ is required to re-contact the physician for clarification." Waters v. Astrue, No. 10-CV-110 (CR), 2011 U.S. Dist. LEXIS 53578, at *29-30 (D. Vt. May 17, 2011) (citing Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998)); see also Santiago v. Astrue, No. 11-CV-6873 (BSJ) (AJP), 2012 U.S. Dist. LEXIS 72731, at *61-62 (S.D.N.Y. May 24, 2012) (Report and Recommendation) ("Before rejecting [the treating physician's] findings as inconsistent, [the] ALJ [ ] was required to develop the record and seek clarification and additional information from the physician to fill any clear gaps . . . ." (internal quotation marks omitted)); Calzada v. Astrue, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) ("[I]f a physician's finding in a report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician to fill any clear gaps before dismissing the doctor's opinion."); Outley v. Astrue, No. 09-CV-0141 (FJS) (VEB), 2010 U.S. Dist. LEXIS 95336, at *20-21 (N.D.N.Y Aug. 26, 2010) ("When the ALJ reasoned that [the treating physician's] opinions seemed inconsistent with her progress notes, he fell squarely in the purview of the regulations requiring him to seek clarification from [the treating physician]."); cf. Carvey v. Astrue, 380 Fed App'x 50, 52 (2d Cir.

10

2010) ("[A]n ALJ may not reject a treating physician's disability opinion base[d] solely on internal conflicts in the physician's clinical findings." (internal quotation marks omitted)). Since the ALJ found that Dr. Kury's letters were inconsistent with her later opinion, she should have sought clarification from Dr. Kury rather than simply rejecting her opinion on this ground.

The ALJ's cursory rejection of Dr. Kury's opinion is particularly dubious because the two letters relied upon by the ALJ simply state that Padro's ability to work was "impaired"—a finding that is surely not *inconsistent* with Dr. Kury's later finding that Padro was unable to work. (Rec. at 284, 637.) The two letters appear to be brief synopses of Padro's condition that were not intended to reflect Dr. Kury's full analysis of Padro's ability to work, as she provided in the more detailed opinion she submitted later.

Second, the ALJ erred in adopting Dr. O'Flaherty's opinion over Dr. Kury's without any meaningful explanation of why she was doing so. In general, a "consulting physician's opinions or report should be given limited weight." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990). Where a consulting physician's opinion is more consistent with the record as a whole, that opinion may be given more weight than the treating physician's opinion. See Van Dien v. Barnhart, No. 04-CV-7529 (PKC), 2006 U.S. Dist. LEXIS 13624, at *45-46 (S.D.N.Y. Mar. 24, 2006). But as with any evaluation of a treating physician's opinion, the ALJ must provide "good reasons" for giving more weight to a consulting physician's opinion, Halloran, 362 F.3d at 32, based on the factors set forth in the regulations, see Schaal, 134 F.3d at 503; see also 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ did not apply these factors and provided no specific reasons for giving more weight to Dr. O'Flaherty's opinion. She therefore failed to properly apply the treating physician rule.

### 2. Credibility Determination

Padro contends that the ALJ failed to properly evaluate her subjective accounts of her pain and symptoms. (Pl. Mem. at 23-24.) The ALJ found that Padro's "medically determinable impairments could not reasonably [have been] expected to cause the alleged symptoms and that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not supported by the substantial record, and [were] not accepted." (Rec. at 17.)

The ALJ's determination that Padro was not credible was almost certainly influenced by the ALJ's improper application of the treating physician rule, which naturally would have affected how the ALJ viewed the totality of the medical record. On remand, the ALJ should consider Padro's subjective accounts in light of a fresh evaluation of Dr. Kury's findings. See Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (because the ALJ's failure to properly apply the treating physician rule "affect[ed] consideration of the ALJ's treatment of the plaintiff's subjective complaints," the court would "not now consider" plaintiff's argument that the ALJ did not properly consider her complaints).

### 3. Disposition

As discussed above, the court concludes that this matter must be remanded to the SSA. The court may either remand for further proceedings or remand for the limited purpose of calculating benefits. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). Remand for calculation of benefits is appropriate where application of the correct legal standards "could lead to only one conclusion." Id. But where there are gaps in the administrative record or where further findings would be helpful to assure proper disposition of the claim, the court must remand for further proceedings. See Rosa v. Callahan, 168 F.3d 72, 82 (2d Cir. 1999); Pokorny

v. Astrue, No. 09-CV-1694 (NGG) (JO), 2010 WL 5173593, at *5 (E.D.N.Y. Dec. 14, 2010); Pogozelski, 2004 WL 1146059, at *20.

Remand for further proceedings is appropriate here because there are examinations and reports in the record that are inconsistent with Dr. Kury's analysis of the severity of Padro's condition, which, if credited, could weigh against a finding of disability. For example, Dr. Haruyo Fujiwaki, a consulting psychologist, found that Padro's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis. (Rec. at 350.) In a work simulation in which Padro participated, the evaluators found that Padro met the "average requirements for work in the competitive job market." (Id. at 500.) Dr. O'Flaherty, the consulting psychologist discussed above, opined that Padro's condition would only "mildly impair her ability to function in a work setting." (Id. at 662.) And even Dr. Kury wrote "moderate/marked" under the activities she checked off as extreme impairments on a psychiatric evaluation form, which may suggest that Dr. Kury viewed the impairments as moderate *to* marked and not marked. (Id. at 619-21.) On remand, the ALJ should consider all of this evidence, properly apply the treating physician rule, and, if necessary, further develop the record.

Padro also requests that her case be assigned to a new ALJ. (Compl. at 3.) While this determination is normally within the purview of the Commissioner, see Hartnett, 21 F. Supp. 2d at 222, the court may order the Commissioner to assign the case to a different ALJ where there are "serious concerns about the fundamental fairness of the disability review process," Sutherland, 322 F. Supp. at 292. The court considers whether there is: "(1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party;

13

(4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party." Id.

The court finds no indication that ALJ Hoppenfeld is biased against Padro or has any hostility toward her. And although the ALJ failed in her previous analysis to properly apply the treating physician rule, the court sees no reason to doubt that the ALJ will properly apply that rule on remand. Thus, Padro's request for her case to be assigned to a new ALJ is denied.

## III. CONCLUSION

For the foregoing reasons, the Commissioner's request for remand is GRANTED; Padro's motion for judgment on the pleadings is DENIED; Padro's motion for reconsideration of the denial of her motion for leave to amend her Complaint and for a stay of proceedings is DENIED; and this case is REMANDED to the SSA for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
July 23, 2012

s/Nicholas Garaufis
NICHOLAS G. GARAUFIS
United States District Judge